IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| THERESA A. CARPENTER, | § |
| | § |
| Plaintiff, | § |
| | § |
| V. | § CIVIL ACTION NO. H-11-4001 |
| | § |
| CAROLYN W. COLVIN, COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION,[1] | § |
| | § |
| Defendant. | § |

**MEMORANDUM AND ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

Before the Court[2] in this social security appeal is Plaintiff's Motion for Summary Judgment and Memorandum in Support (Document No. 15), and Defendant's cross Motion for Summary Judgment and Memorandum in Support (Document Nos. 16 & 17). After considering the cross motions for summary judgment, Plaintiff's Response to Defendant's Motion for Summary Judgment (Document No. 18), the administrative record, the written decision of the Administrative Law Judge, and the applicable law, the Court ORDERS, for the reasons set forth below, that Plaintiff's Motion for Summary Judgment is GRANTED, Defendant's Motion for Summary Judgment is DENIED, and this proceeding is REMANDED to the Commissioner of the Social Security Administration for

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, she therefore should be substituted for Michael J. Astrue as the defendant in this case.

[2] On March 20, 2012, pursuant to the parties' consent, this case was transferred by the District Judge to the undersigned Magistrate Judge for all further proceedings. *See* Document No. 11.

further proceedings.

I.     **Introduction**

Plaintiff Theresa A. Carpenter ("Carpenter") brings this action pursuant to Section 205(g) of the Social Security Act ("Act"), 42 U.S.C. § 405(g), seeking judicial review of an adverse final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her applications for disability insurance benefits ("DIB") and supplemental security income benefits ("SSI"). Carpenter argues that: (1) "The ALJ's Finding that Plaintiff's Seizure Disorder is Not A Medically Determinable Impairment is Unsupported by Substantial Evidence and Results form Legal Error"; (2) "The ALJ Failed to Give Proper Weight to the Opinion of Plaintiff's Treating Physician"; and (3) "The ALJ's RFC Finding is Unsupported by Substantial Evidence and Results from Legal Error." Plaintiff's Memorandum in Support of Plaintiff's Motion for Summary Judgment (Document No. 15) at 3. The Commissioner, in contrast, argues that there is substantial evidence in the record to support the ALJ's decision, and that the decision comports with applicable law.

II.    **Administrative Proceedings**

On August 8, 2009, Carpenter applied for disability insurance benefits and supplemental security income benefits, claiming that she has been unable to work since December 31, 2007, as a result of a brain aneurysm/venous angioma, seizures, high blood pressure, thyroid problems, and back problems. (Tr. 172-176; 211, 233). The Social Security Administration denied the applications at the initial and reconsideration stages. After that, Carpenter requested a hearing before an ALJ. The Social Security Administration granted her request and the ALJ, William B. Howard,

held a hearing on October 27, 2010, at which Carpenter's claims were considered *de novo*. (Tr. 33-86). On September 13, 2011, the ALJ issued his decision finding Carpenter not disabled. (Tr. 10-20).

Carpenter sought review of the ALJ's adverse decision with the Appeals Council. The Appeals Council will grant a request to review an ALJ's decision if any of the following circumstances are present: (1) it appears that the ALJ abused his discretion; (2) the ALJ made an error of law in reaching his conclusion; (3) substantial evidence does not support the ALJ's actions, findings or conclusions; or (4) a broad policy issue may affect the public interest. 20 C.F.R. § 404.970; 20 C.F.R. § 416.1470. After considering Carpenter's contentions in light of the applicable regulations and evidence, the Appeals Council found no basis upon which to grant Carpenter's request for review. (Tr. 1-3). The ALJ's decision thus became final.

Carpenter has filed a timely appeal of the ALJ's decision. 42 U.S.C. § 405(g). The parties have filed cross motions for summary judgment (Document Nos. 15 & 16). The appeal is now ripe for ruling.

### III.   Standard for Review of Agency Decision

The court's review of a denial of disability benefits is limited "to determining (1) whether substantial evidence supports the Commissioner's decision, and (2) whether the Commissioner's decision comports with relevant legal standards." *Jones v. Apfel*, 174 F.3d 692, 693 (5th Cir. 1999). Indeed, Title 42, Section 405(g) limits judicial review of the Commissioner's decision: "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." The Act specifically grants the district court the power to enter judgment, upon the

pleadings and transcript, "affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing" when not supported by substantial evidence. 42 U.S.C.§ 405(g). While it is incumbent upon the court to examine the record in its entirety to decide whether the decision is supportable, *Simmons v. Harris*, 602 F.2d 1233, 1236 (5th Cir. 1979), the court may not "reweigh the evidence in the record nor try the issues de novo, nor substitute [its] judgment for that of the [Commissioner] even if the evidence preponderates against the [Commissioner's] decision." *Johnson v. Bowen*, 864 F.2d 340, 343 (5th Cir. 1988); *Jones v. Apfel*, 174 F.3d 692, 693 (5th Cir. 1999); *Cook v. Heckler*, 750 F.2d 391 (5th Cir. 1985). Conflicts in the evidence are for the Commissioner to resolve. *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992).

The United States Supreme Court has defined "substantial evidence," as used in the Act, to be "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229 (1938). Substantial evidence is "more than a scintilla and less than a preponderance." *Spellman v. Shalala,* 1 F.3d 357, 360 (5th Cir. 1993). The evidence must create more than "a suspicion of the existence of the fact to be established, but no 'substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983).

**IV.    Burden of Proof**

An individual claiming entitlement to disability insurance benefits under the Act has the burden of proving his disability. *Johnson v. Bowen*, 864 F.2d 340, 344 (5th Cir. 1988).    The Act

4

defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The impairment must be proven through medically accepted clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3). The impairment must be so severe as to limit the claimant in the following manner:

> he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied to work.

42 U.S.C. § 423(d)(2)(A). The mere presence of an impairment is not enough to establish that one is suffering from a disability. Rather, a claimant is disabled only if he is "incapable of engaging in any substantial gainful activity." *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992) (quoting *Milam v. Bowen,* 782 F.2d 1284, 1286 (5th Cir. 1986)).

The Commissioner applies a five-step sequential process to decide disability status:

1.  If the claimant is presently working, a finding of "not disabled" must be made;

2.  If the claimant does not have a "severe impairment" or combination of impairments, he will not be found disabled;

3.  If the claimant has an impairment that meets or equals an impairment listed in Appendix 1 of the Regulations, disability is presumed and benefits are awarded;

4.  If the claimant is capable of performing past relevant work, a finding of "not disabled" must be made; and

5.  If the claimant's impairment prevents him from doing any other substantial gainful activity, taking into consideration his age, education, past work

experience and residual functional capacity, he will be found disabled. *Anthony,* 954 F.2d at 293; *see also Leggett v. Chater,* 67 F.3d 558, 563 n.2 (5th Cir. 1995); *Wren v. Sullivan,* 925 F.2d 123, 125 (5th Cir. 1991). Under this framework, the claimant bears the burden of proof on the first four steps of the analysis to establish that a disability exists. If successful, the burden shifts to the Commissioner, at step five, to show that the claimant can perform other work. *McQueen v. Apfel,* 168 F.3d 152, 154 (5th Cir. 1999). Once the Commissioner shows that other jobs are available, the burden shifts, again, to the claimant to rebut this finding. *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990). If, at any step in the process, the Commissioner determines that the claimant is or is not disabled, the evaluation ends. *Leggett,* 67 F.3d at 563.

Here, the ALJ found at step one that Carpenter had not engaged in substantial gainful activity since December 31, 2007, Carpenter's alleged onset date. At step two, the ALJ found Carpenter had the following severe impairments: degenerate disc disease in the cervical spine, degenerative joint disease in the left shoulder, obesity, and an affective mood disorder. In addition, the ALJ specifically found at step two that Carpenter did not have a "medically determinable" seizure disorder. At step three, the ALJ concluded that Carpenter did not have an impairment or combination of impairments that met or medically equaled a listed impairment. The ALJ then, prior to consideration of steps four and five, determined that Carpenter had the residual functional capacity ("RFC") to perform a limited range of light work. (Tr. 16-18). Applying that RFC, the ALJ found, at step four, that Carpenter could not perform her past work as a home health care aide. At step five, using that same RFC, and considering Carpenter's age, education, and work experience, the ALJ concluded that there were jobs in significant numbers in the national and regional economy that Carpenter could perform and that she was, therefore, not disabled.

In this appeal, Carpenter first challenges ALJ's determination at step two. In particular, Carpenter argues that the ALJ erred in failing to find that she had a medically determinable seizure disorder. According to Carpenter, whether she suffers from electrical/epileptic type seizures or psychologically-based pseudo-seizures, there is evidence in the record that she has a "medically determinable" seizure impairment. In addition, Carpenter contends that the ALJ erred at step five in determining and applying her RFC because he failed to properly consider the opinions and diagnoses of her treating physician and failed to account for her degenerative disc and degenerative joint impairments.

In determining whether substantial evidence supports the ALJ's decision, the court weighs four factors: (1) the objective medical facts; (2) the diagnosis and expert opinions of treating physicians on subsidiary questions of fact; (3) subjective evidence of pain and disability as testified to by the plaintiff and corroborated by family and neighbors; and (4) the plaintiff's educational background, work history and present age. *Wren,* 925 F.2d at 126.

### V.    Discussion

Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A medically determinable impairment is "an impairment which has demonstrable anatomical, physiological or psychological abnormalities. Such abnormalities are medically determinable if they manifest themselves through medical evidence consisting of symptoms, signs, and laboratory findings. Symptoms alone, however, do not constitute a basis for

finding a medically determinable impairment." SSR 82-58, 1982 WL 31378, 1. "If no medically determinable *physical* impairment is found, yet the person alleges work-related limitations due to a symptom normally attributable to a physical impairment, the possibility of a medically determinable severe *mental* impairment must be considered." *Id.* at 2 (emphasis in original).

Here, Carpenter maintains that she has a "medically determinable" seizure impairment, which may or may not be psychologically-based. The ALJ found, as follows, that Carpenter's alleged seizure impairment was not "medically determinable":

> . . . Dr. Bentlif indicated the claimant has a long history of subjective reports of possible petit mal seizure-type disorder (Exhibits 4F5 and 14F6). Nurse's notes in August 2009 show that claimant described having a tonic-clonic seizure at home and an episode one year previously (Exhibit 11F5). However, the record contains no evidence of convulsions with injury to the tongue or loss of control of bladder or rectal sphincters. Dr. Bentlif stated the medical record includes no documentation of observed seizure.
>
> The record shows the claimant has had [ ] multiple brain evaluations, including CT scans, EEG, MRI studies, and neurological consultations, but no positive findings were described (Exhibit 14F36, 42-44, 66). Dr. Bentlif noted that occasional comments throughout the record indicate the claimant's seizures are on a functional basis. The record shows the claimant has described temporary, transient attacks, which have been atypical for what has been ailing her. For example, the record shows the claimant had a functional, psychological-based seizure that stopped when her boyfriend suggested a snake was nearby (Exhibit 4F5). Dr. Bentlif explained that having been able to stop the attack at will suggests that the claimant's experience was a pseudo-seizure rather than based on electrical changes in the brain. Based on his professional opinion and the record as a whole, Dr. Bentlif testified the claimant does not have a seizure disorder.
>
> A medically determinable physical or mental impairment is an impairment that results from anatomical, physiological, or psychological abnormalities, which can be shown by medically acceptable clinical and laboratory diagnostic techniques. Regardless of how many symptoms a claimant alleges, or how genuine a claimant's complaints may appear to be, the existence of a medically determinable physical or mental impairment cannot be established in the absence of objective medical abnormalities. (SSR 96-4p). The objective medical evidence of record does not corroborate the claimant's allegation of seizure disorder; thus, this condition is not

medically determinable.

(Tr. 13-14).

Having considered the objective medical evidence, the diagnoses and expert medical opinions, and Carpenter's subjective complaints, the Court concurs with Carpenter that substantial evidence does not support the ALJ's determination that Carpenter's alleged seizure impairment was not "medically determinable." First, objective medical evidence shows that Carpenter has long complained of, and been treated for, a seizure disorder. (Tr. 351 ("seizure like activity"); 352 ("seizure type disorder"); 354 ("pseudoseizure-like activity"); 363 ("seizure witnessed by family"); 366 ("Pt had episode on 3/25/97 where she "passed out [and] paramedic said she was jerking" . . . paramedics reported seeing seizure activity"); 412, 414 (seizure disorder); 477 (clinical impression: seizure disorder); 485 ("petit mal seizure"); 518 (seizure witnessed by friends; "she was shaking in her sleep"); 542 ("Impression: seizure with known seizure disorder"); 689 ("seizure disorder out of Klonopin"); 722 ("Patient likely has complex seizure"); 725 ("Episodes of right-sided sensory and motor deficits with difficulty expressing herself. Possible partial seizures versus transient ischemic attack."); 973 ("Impression: status post seizure with right-sided deficits, Todds paralysis, currently improved. Had 2 other breakthrough seizures as well, on in the ambulance and one in the emergency room, witnessed.")). She takes seizure medication. (Tr. 474, 535, 599, 602-603, 973, 1010, 1317). Medical personnel have observed seizure activity on at least two occasions. (Tr. 366; 973). While numerous medical tests, including CT scans, MRIs and EEGs have not revealed typical seizure activity, the type of seizures Carpenter complains of do not appear to be "typical." Indeed, the medical expert who testified at the hearing, Dr. Philip Bentlif, opined that he did not believe Carpenter had a seizure disorder (Tr. 70), but he also testified that Carpenter's complaints were more

9

consistent with pseudo-seizures, which are psychological in nature (Tr. 69, 76). That is consistent with some of the other evidence in the record. (Tr. 352 ("Dr. Boch has told her, but not the patient directly, that most of these are psychological in nature and most likely pseudoseizures"); 354 ("pseudoseizure-like activity"). It is also consistent with Dr. Bentlif's testimony about the difference between an electrical, epileptic-type seizure and a pseudo-seizure:

> . . . it seems that if she has, as we've heard from Counsel, if she gets nervous or if she gets into a state of anxiety she may have a pseudo seizure or some other manifestation. . . . Well, the record as a whole, the seizures are described [rather] than observed and there has been no description of tonic-clonic convulsions or rectal sphincters and there's just, she gives a history of having seizures but again the description in 4F, page 5 states that she was able to at that time at any rate was able to put on seizures and stop them at will which would suggest on the basis of that good description in the record that these are pseudo seizures, functional rather than based on electrical changes in the brain and the EEG report was negative. . . . Well, what we're getting down to is a discussion again based on the record whether or not the seizures are genuine seizures [being] abnormalities producing seizures or whether these are functional pseudo seizures and a seizure is a seizure whether it's an electrical seizure or drunk withdrawal seizure or a pseudo seizure.

(Tr. 69, 71, 76). Finally, there is testimony from Carpenter that when she has a "seizure" she experiences numbness on her right side, is nauseous, and can't talk (Tr. 51-54). She has had this type of "seizure" activity since 1995. (Tr. 49).

Because the ALJ only appears to have considered whether Carpenter had a medically determinable "seizure disorder" that is electrical/epileptic in nature, and did not consider whether Carpenter had a medically determinable pseudo-seizure disorder, an impairment that has support in the objective medical evidence, including the observations of seizure activity by medical personnel on two occasions, the diagnoses and expert medical opinions, and Carpenter's subjective complaints, the ALJ erred at step two in his determination that Carpenter did not have a medically determinable "seizure disorder." Given that error at step two, the sequential steps of the disability analysis must

be reconsidered as well. Thus, this proceeding must be remanded for further development and consideration of whether Carpenters's seizure disorder is medically determinable as a psychological impairment and whether such an impairment affects the subsequent, sequential steps of the disability analysis.

### VI. Conclusion and Order

Based on the foregoing, and the conclusion that substantial evidence does not support the ALJ's decision that Carpenter does not have a medically determinable seizure disorder, it is

ORDERED that Plaintiff's Motion for Summary Judgment (Document No. 15) is GRANTED, Defendant's Motion for Summary Judgment (Document No. 16) is DENIED, and this matter is REMANDED to the Commissioner pursuant to sentence four, 42 U.S.C. 405g, for further proceedings consistent with this Memorandum and Order.

Signed at Houston, Texas, this 1st day of March, 2013.

Frances H. Stacy
United States Magistrate Judge